IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DESMOND KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:15cv380-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

## I.  Introduction

Plaintiff Desmond Kelly ("Kelly") applied for supplemental security income benefits under Title XVI of the Social Security Act,  42 U.S.C. § 1381 et seq., alleging that he was unable to work because of a disability.   His application was denied at the initial administrative level.   The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim. The Appeals Council rejected a subsequent request for review.   The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).  The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  Pursuant

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1, the parties have consented to the United States Magistrate Judge conducting all proceedings in this case and ordering the entry of final judgment.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and this case remanded to the Commissioner for further proceedings.

## II.  Standard of Review

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . .

To make this determination,[3] the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative answer to any question, other than step three, leads to a determination of "not disabled."

---

[3]   A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The standard of review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).  A reviewing court may not look only to those parts of the record which support the decision of the ALJ but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.  The Issues

**A.  Introduction.**  Kelly was 52 years old[5] on the date of alleged onset of disability, and has a limited education.  (R. 20).  His prior work experience includes work as a tire

---

[4] *McDaniel v. Bowen*, 800 F.2d 1026 (11th Cir. 1986) is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See e.g. Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981) (Unit A).

[5] In her opinion, the ALJ makes the following finding.  "The claimant was born on October 19, 1960 and was 52 years old, which is defined as a younger individual age 18-49, on the date the application was filed."  (R. 20).  The error in this statement is apparent.

changer.  (*Id*.).  Following the administrative hearing, the ALJ concluded that Kelly has

severe impairments of "moderate degenerative osteoarthritis of the right knee, osteoarthritis

of the left knee, and obesity."  (R. 15).  The ALJ found that Kelly was unable to perform his

past relevant work but concluded that he

> has the residual functional capacity to perform a medium work as defined in
> 20 CFR 416.967(c) he is limited to occasional operation of foot controls with
> the right lower extremity; no climbing of ladders, ropes, or scaffolds; no
> kneeling, crouching, or crawling; and no unprotected heights, hazardous
> machinery, or excessive vibration.

(R. 16).

Using the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P., App. 2, as a

framework and relying on the testimony of a vocational expert, the ALJ concluded that there

were significant number of jobs in the national economy that the plaintiff could perform.  (R.

20-21).  Accordingly, the ALJ concluded that the plaintiff was not disabled.  (R. 21).

**B. Plaintiff's Claim.**  As stated by Kelly, the issue for the court's review is whether

"[t]he Commissioner's decision should be reversed because in issuing her negative credibility

finding the ALJ failed to apply the proper legal standard and improperly took judicial notice

of facts not in evidence."  (Doc. # 13, Pl's Br. at 3).

## IV.  Discussion

After reciting the law, the ALJ detailed the medical evidence and found that the

plaintiff's testimony "as to his limitations not fully credible and that he is not precluded from

performing the demands of all work."  (R. 18).  The ALJ repeatedly discredits the plaintiff's

pain testimony because "he has received minimal, conservative treatment for his allegedly

4

disabling pain and the objective findings do not indicate that he is as limited as alleged." (R. 17-20).  The ALJ then says this:

> Additionally, the undersigned recognizes the claimant's financial situation is not optimal and that this has been a factor in his having been unable to afford additional healthcare.  However, *on this record, the undersigned is unable to make a finding that the claimant has exhausted all resources available to individuals who cannot afford medical treatment or medication such as hospitals, clinics, or community agencies*.  In fact, the claimant presented with reports of pain on only three occasions since the application date, and only to the emergency room on one of those occasions.  Accordingly, the undersigned finds that the claimant's testimony is not credible with respect to the intensity and persistence of his pain and other symptoms.

(R. 18-19) (emphasis added).

The ALJ discredited the plaintiff because he failed to seek medical care.  In this regard, she erred as a matter of law.  The record is replete with references to Kelly's inability to afford treatment.  (R. 8, 49, 50, 225-26, 279 & 281).  The ALJ did not conduct a searching inquiry into the plaintiff's financial condition as it related to his medical treatment, even though he testified to his inability to support himself financially. (R. 30-31).  The record reveals that the plaintiff has not been gainfully employed for many years; he lives in an abandoned house with no heat or gas; and he subsists on food stamps.  (R. 7, 49, & 225-26).  The colloquy between the ALJ and the plaintiff is telling.

        Q:      Have you worked at all since December of 2012?
        A:      No.
        Q:      Have you applied for any jobs?
        A:      No.
        Q:      And how are you supporting yourself?
        A:      I'm really not, I'm living in a house with somebody, and then getting
                Food Stamps.  I'm really not, really supporting myself.  The fact that
                like, you know, just really doing anything, it's still probably mostly

homeless still like I be.

\*      \*      \*

Q:    And who do you live with?

A:    Me and a, the other person maybe come by, mostly just by myself really.  Peoples just really just let me live in there since I don't have anywhere to go.

(R. 30-31)

The ALJ then questioned Kelly about his pain but she did not ask about his treatment.

Q:    And that's the level of pain you're in right now, is that correct?

A:    No, I, I took some pain pills.  This was a little – is –

Q:    What kind of pain pills did you take today?

A:    I had some Tylenol and Tramadol.

Q:    Who prescribed the Tramadol?

A:    A doctor at River Regions, I forgot his name.

Q:    How often do you take the Tramadol?

A:    Mostly I take them as needed.  When I'm –

Q:    How often do you take the Tramadol?

A:     Mostly when I try to sleep or during the day, if I try to get up and do something, to move around.

Q:    How often do you take the Tramadol?

A:    About maybe, as needed, yeah.

Q:    How often do you take the Tramadol?

A:    Like two or three times a day, as, well, as needed, well when I eat with meals –

Q:    Do, do you take it two to three times a day everyday?

A:    With meals, I take it mostly with meals.

Q:    Do you take it – Mr. Kelly, we're going round and round.  Listen to my questions.

A:    Yes.

Q:    I know it's been prescribed, take as needed.  I know you can probably take up to two to three per day.

A:    Yeah.

Q:    What I want to know is how often you take the Tramadol.

A:    About three times a day.

Q:    Three times a day.

A:    Yeah.

6

Q:     For how long, how long have you been taking Tramadol three times a
       day?
A:     Probably, I've been changing up on it, so I take Tramadol then I take
       Tylenol.
Q:     Mr. Kelly, how long have you been taking Tramadol three times a day?
A:     For about, ever since I've been going to the doctor really.
Q:     Mr. Kelly, how long have you been taking Tramadol three times a day?
A:     It's hard to say, because I've been taking it for a while.

(R. 34-35).

The plaintiff further testified that he could not get a new ID card because he didn't

have the money to pay for one.  (R. 37).  At no point during the administrative hearing did

the ALJ ask about Kelly's efforts to secure treatment and she did not delve into Kelly's

financial condition at all. The ALJ did not inquire into the availability of free or subsidized

sources of treatment.  The ALJ simply assumes that these resources are available, and she

assumes that these resources could provide the medical treatment required by the plaintiff.

Interestingly, the record contains two applications for charity care from UAB Medicine in

Birmingham.  *See* R. 50, 279.  The ALJ does not mention this evidence.

When discounting the plaintiff's testimony for non-compliance, the ALJ is obligated

to follow Social Security Ruling 82-59.  A review of Social Security Ruling 82-59 clearly

demonstrates that the ALJ failed to meet her burdens as set forth in the Ruling.

> The claimant or beneficiary should be given an opportunity to fully express the
> specific reason(s) for not following the prescribed treatment.   Detailed
> questioning may be needed to identify and clarify the essential factors of
> refusal. . . . Individuals should be asked to describe whether they understand
> the nature of the treatment and the probable course of the medical condition
> (prognosis) with and without the treatment prescribed. . . . They should be
> made aware that the information supplied will be used in deciding the
> disability claim and that, because of the requirements of the law, continued

7

failure to follow prescribed treatment without good reason can result in denial
or termination of benefits.

*Social Security Ruling*, 82-59 (Aug. 20, 1980).

While failure to seek treatment is a legitimate basis to discredit the testimony of a
claimant, it is the law in this circuit that poverty excuses noncompliance with prescribed
medical treatment or the failure to seek treatment. *Dawkins v. Bowen*, 848 F.2d 1211 (11th
Cir. 1988). The ALJ concluded that, *on this record*, she could not make a finding that Kelly
had exhausted his community resources but then she discredited his testimony based on his
failure to seek medical care. The ALJ retains the responsibility of fully and fairly developing
the record. The ALJ erred as a matter of law when she failed to develop the record with
regard to whether relevant free community resources exist as required under SSR 82-59, and
when she discredited the plaintiff's testimony for failing to secure treatment without first
inquiring into whether good cause exists to justify Kelly's alleged failure to seek more
treatment. Consequently, the court concludes that the ALJ erred as a matter of law when she
failed to develop the record regarding the plaintiff's financial situation as it relates to his
failure to seek treatment, and thus, her credibility determination is thus wholly inadequate
in light of the facts.

The court is compelled to address one other aspect of this case that it finds troubling.
It is patently obvious from reading the transcript that Kelly was having difficulty answering
the ALJ's questions during the administrative hearing. At one point, Kelly told the ALJ that
he was getting confused. (R. 37). Moreover, Kelly testified that dropped out of school in

the eighth or ninth grade.  (R. 41-42).

Q:     Besides sleeping and watching TV, do you do any, anything else during the day?

A:     No I can't because my leg won't let me do nothing.

Q:     So if you're watching TV for 12 hours a day, are you sleeping for 12 hours a day?

A:     Sometime, it, it, it varies from sleeping to watching TV, sleeping and up watching TV.

Q:     All right, so how long have you been doing nothing but sleeping and watching TV all day?

A:     Ever since the pain started getting worser.  It's the only thing I could do.

Q:     How long have you been sleeping and watching TV all day?

A:     That's the only thing I'm able to do.  Can't go nowhere.

Q:     How long –

A:     For about, it's a long time, maybe about a year ago, six months or more, a long time.

Q:     All right, now, you look really strong.  You look very strong.  Your arms look very strong from doing nothing but sleeping and watching TV.

A:     That's all I have been able to do.

Q:     All right.  I'm having a hard time believing that.  Counsel, do you have any questions?

BY ATTORNEY:

Q:     How far did you go in school, Mr. Kelly?

A:     Eighth grade, ninth grade.

BY ADMINISTRATIVE LAW JUDGE:

Q:     Now there is a note in there that says you have a high school education?

A:     No, I never did finish high school.

Q:     Do you have a GED?

A:     No.

Q:     Or an eleventh grade, I see one part it says eleventh grade.  When you filled out your disability report in 2E, you said you completed the eleventh grade in 1979 and did not attend special education.[6]

A:     No, no special education.

Q:     I'm – I had, I had it written down.  It shows the eleventh grade and not the twelfth.

---

[6] The court notes that Kelly's disability report was completed by a disability specialist during an in-person interview in the Social Security office.  (R. 195)

A:      No.  I didn't finish high school.

Q:      Did you complete the eleventh grade?

A:      Eleventh grade.

Q:      Yes.

A:      Yeah.

Q:      All right.

A:      None, nine to eleventh.  I dropped out.  I was going through a lot of changes then.  I dropped out in ninth or the tenth grade, something like that.  I didn't finish the whole semester.

         \*      \*      \*

ATY:   That's all I have.

ALJ:   All right.

CLT:   I don't know, ma'am, but get on nerves, maybe nerves.  I can't even think straight.

(R. 40-43).

There is sufficient evidence in the record from which the ALJ should have concluded that it was necessary to secure additional evidence regarding the plaintiff's intellectual functioning before rendering a decision regarding his disability.  Kelly's testimony, coupled with his confusion during colloquies with the ALJ during the administrative hearing, should have led the ALJ to conclude that additional information was needed to properly evaluate his intellectual limitations.  It is clear that Kelly suffers from some intellectual or mental deficits.  What is not clear is the extent or effect of any intellectual limitation on his ability to work.  The ALJ's failure to develop the record regarding Kelly's intellectual capabilities is contrary to the evidence, and erroneous as a matter of law.

Where a consultative evaluation is needed to make an informed decision, it is error for an ALJ not to order such an evaluation.  *Reeves v. Heckler*, 734 F.2d 519 (11th Cir. 1984).  Under the circumstances of this case, the court concludes that there was sufficient information before the ALJ to require her to obtain a psychiatric or psychological evaluation

about Kelly's mental impairments so she could make an informed decision. "[I]n any case where there is evidence which indicates the existence of a mental impairment the . . . [Commissioner] may determine that the claimant is not disabled only if the . . . [Commissioner] has made every reasonable effort to obtain the opinion of a qualified psychiatrist or psychologist." *McCall v. Bowen*, 846 F.2d 1317, 1320 (11th Cir. 1988). While the ALJ is entitled to make credibility determinations, the ALJ may not substitute her judgment for the judgments of experts in their field of expertise. "'Even a "mild" mental impairment may "prevent [a] claimant from engaging in the full range of jobs contemplated by the exertional category for which the claimant otherwise qualifies.'" *Allen v. Sullivan*, 880 F.2d 1200, at 1202 (11th Cir. 1989).

By failing to refer Kelly for a consultative psychological examination, the ALJ improperly substituted her judgment for that of a psychologist with respect to the question of whether the plaintiff has a mental impairment. The court concludes that the case should be remanded to further develop the record by ordering a psychological evaluation so that the next ALJ will have a full and complete picture of the extent of the plaintiff's intellectual functioning and its effects on his ability to work.

## V. Conclusion

"Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000). In this regard, the ALJ failed in her duty to develop the record.

> The SSA is perhaps the best example of an agency that is not based to a significant extent on the judicial model of decisionmaking. It has replaced normal adversary procedure with an investigatory model, where it is the duty of the ALJ to investigate the facts and develop the arguments both for and against granting benefits; review by the Appeals Council is similarly broad. *Id*. The regulations also make the nature of the SSA proceedings quite clear. They expressly provide that the SSA "conducts the administrative review process in an informal, nonadversary manner." 20 C.F.R. § 404.900(b).

*Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000). Based on the inadequate credibility determination, the court cannot determine whether the ALJ's conclusion that the plaintiff is not disabled is based on substantial evidence. Accordingly, the decision of the Commissioner will be reversed and this case remanded to the Commissioner for further proceedings consistent with this opinion.

A separate final judgment will be entered.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec*., 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after he receives notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 Fed. Appx. 241, 242 fn.1 (11th Cir. 2008).

Done this 23rd day of May, 2016.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE